The first case today is number 24-2117 John Restrepo v. Castano et al. v. Pamela J. Bondi. At this time, would counsel for the petitioners please introduce themselves on the record to begin. Attorney Ronald L. Abramson on behalf of Petitioners John Restrepo Castano and his family. Your Chief Judge, I would request one minute for rebuttal. Absolutely. Thank you, Your Honors. May it please the Court. I think it's been about 22 years since I had an oral argument before this Honorable Court. It's nice to be back. This case comes down to the significance of three words. And, only, and threat. I'll explain. We are here today because an Administrative Law Judge and an Administrative Appellate Tribunal repeatedly discounted the conjunctive significance of the word, and. In a moment, we'll get to the word, only, and coupled with that will be the word, threat. And for the purposes of this argument, Petitioner concedes that we are subject to the standard of review that the Court put forward in Medina's Sugilenda versus Garland, and it is a clear error standard of review on the finding of unable or unwilling, which we will get to momentarily. The factual record in this case is essentially undisputed. It consists of Petitioner's credible testimony and hundreds of pages of supporting documentation. First, let's talk about the word, and. The controlling regulation on persecution says that in order for conduct to constitute persecution for purposes of asylum and withholding, the harm must be either perpetrated by the government itself, not the case here, or by a private actor that the government is unwilling and unable to control. We had willingness. We lack ability. Again, there is no dispute that Petitioner was threatened, was threatened repeatedly, was threatened by phone, was threatened in person, was threatened with harm against himself, was threatened with harm against his spouse, was threatened with harm against his young child. It's also uncontradicted from the record that the Gulf Clan is a notorious transnational criminal enterprise, which the Colombian government has been and continues to be unable to control at both a macro and a micro level. Petitioner reported the threats duly, and commendably, the police took some action. They responded. They sent a representative, translated in the record as a companion. That may have been a translation issue. But they sent someone to be present at Petitioner's place of business. I believe it was a bakery at the time. That physical presence coincided with the cessation of the in-person threats. There were no more in-person threats after that physical police presence at his business. But the telephonic threats never ended. They ceased until Petitioner and his family. Counsel, is it your position that if the threats do not cease entirely, if they continue in some form, that that necessarily means that the government is unable to protect the petitioners? You seem to suggest that ongoing threats establish an inability. That's not what the case law suggests, is it? We are not advocating a per se rule, Your Honor. We think it should be a case-by-case analysis. And the court dealt with this in Rosales Justo, where the court parsed out this issue about the investigation versus the ability to stop the conduct. Now, granted, many of the cases have involved more extreme outcomes and harm in the physical sense, and we'll get to that in a minute. But in Rosales Justo, the family waited, and their adult son was found dead with five bullets in his body. That's a question that has to be part of the analysis, is when is the moment in time that a person flees? One possibility is you're making a clear error challenge. You say you're not doing that, or you are doing that? We are making a clear error challenge. So then I don't understand the point that you're making about and. Because that would seem to be a legal point, that he made a legal error, that the agency made a legal error by not recognizing it had to also decide the unable question in addition to the unwilling. But you're not saying that that error was made? Well, frankly, Your Honor, I've struggled with that issue because the court rejected that the finding on unwilling and unable is a mixed question of fact and law. The court's reviewing the BIA's. No, no, I understand that. What we're reviewing is do the facts show it's unable and unwilling. You're acknowledging that we review that for clear error, whether that's right or wrong. That's just what the law is. You don't seem to be contesting that, right? We are somewhat grudgingly conceding that point, yes, Your Honor. Okay, but then you could be arguing that the agency erred as a matter of law by thinking that if it was unwilling, that ended the matter, and it didn't have to also decide unable. Are you making that argument? I am making that argument as well. That's a purely legal argument. Correct. Right. I don't see any basis for concluding the agency made that legal error. What would be the basis for saying that? In the way that it reviewed the record from the BIA. Did it not consider the question about inability? It did not adequately consider it. Well, that's a clear error challenge. That's not a legal challenge. Which goes back to? Yeah, so I'm just trying to figure out what the argument is. It sounded like you were setting up to be making a legal argument in which the word and would be a perfectly proper thing to focus on. So, I'm just trying to say, what is your argument on that score? I'm not following it. We will present it as a clear error challenge, Your Honor, with the understanding that more colloquially it is difficult to disembagulate these words. If it's a clear error challenge, then, to Judge Lopez's question, if you're not making the per se argument and you acknowledge it's a case-by-case assessment, what here was clearly erroneous? We'll go to the words only and threat. In the BIA's decision, which is the direct document for review here, the word threat appears three times, or threats appears three times. The word death doesn't appear once. These were death threats. These weren't inconveniences. These weren't, you know, we're going to make things difficult for you. These were mortal threats to the person's being, and it was understood in the supporting documentation supports that those threats are about grotesque physical consequences. Counsel, in terms of what the facts in the record showed, are you able to clarify for me, was there testimony about whether your client contacted the police again after the telephonic threats continued? I thought the record was a little bit unclear on that. I think it is ambiguous, Your Honor. I think even the government may have conceded that that is an ambiguous point. But because the record is undisputed that the telephonic threats continued, and it was only a matter of months between the cessation of the in-person threats at the business and the family's decision to leave to save their lives. Counsel, I'm sorry. I think maybe you misunderstood my question. I thought that the record was unclear about whether your client contacted the police again when the telephonic threats continued. In other words, I understand the record to show that once they sent someone to his bakery to be with him, the in-person threats ceased. But his testimony and what you're relying on is that the telephonic threats continued. Does the record say definitively if he contacted the police again to complain about the telephonic threats? I am not aware of an explicit subsequent complaint, Your Honor. There is a discussion about never having received any sort of confirmation of the initiation of an investigation, going back to the original report. That's in the record. So I think the question that I have for you is, if the record is ambiguous on that point, how can we conclude, given the standard and the deference that we owe the agency, that it was incorrect for it to find that the government here was both willing and able? In other words, if we don't even know if your client complained again about the telephonic threats, how can we overturn what the agency concluded about ability? It's a difficult issue, Your Honor. The reality is he did complain. They sent someone. In-person threats stopped. Telephonic threats didn't. That is replete in the record, and the judge made that finding. I understand. We can follow up during your rebuttal time. Thank you, Your Honor. Thank you. Thank you, Counsel. At this time, would Counsel for the Respondent please introduce himself on the record to begin? Okay. Good morning, Your Honor. John Stanton for the Respondent. May it please the Court? Okay? Yes. I'm still not sure exactly whether or not the petitioner is conceding the legal error challenge with respect to standard review, but even if he didn't, we maintain that he abandoned it by not including it in the statement of issues. In his brief on page 5, he only lists one issue, and Federal Rules of Procedure 28 is clear. I mean, rules are rules. But even assuming that he did preserve it as some sort of exception to Rule 28, I mean, for the reasons that Petitioner's Counsel said, this Court made clear in the Medina —I'm not sure I can pronounce it— the recent decision made clear that whether or not the government is unable or unwilling to protect someone is a factual inquiry. This Court has made the same point repeatedly. The decision that Petitioner cited in his opening brief dealt with a separate issue of whether or not mistreatment reaches the level of persecution. Counsel, I wondered if you could educate me on a point of law. I'll try. Probably I should know it, but I'm not sure of it, so I want to take advantage of your presence here. When we're dealing with persecution by a nongovernmental actor, which is what we're dealing with here, do the protected grounds matter? Race, religion, ethnicity. I ask that because there is a suggestion in this record that these people, the petitioners, were the object of, unfortunately, very common criminal activity, which they became the objects of these threats because they had a business, they had some money. The criminal gang wanted to extort money. That has nothing to do with a protected ground as set forth in the statute. Does that even matter? I wish it did, really, because I think Your Honor is correct. But as far as I know, the protected ground does not matter from the unable slash unwilling element. That's a completely separate element. But if this court were, and again, we don't think you should send it back. That's something the agency can consider, yes. But to answer your question, no. It does not matter at all. I do not believe so. I'm not aware of any case law that says that the nexus issue impacts the unable or unwilling element. That's very helpful. Thank you. Anyway, but going back to the unable unwilling element, the petitioner has also conceded that the Colombian government is willing to fight criminals. The only issue is will they have the ability to do so. This court has said repeatedly that on page 14 of our brief, we cite several decisions from this court that the police's response can support a finding of both willingness and ability. And in this case, we think the standard is met. This court has also said in several decisions that so long as the response produces, I think it was in the sin decision that so long as it produces, it was fruitful. It was fruitful. And in the con decision, so long as it improved the situation, that also supports. That's not an absolute requisite, but it does support that the police did have the ability to control that. And in this case, it appears that when the police sent a policeman to guard the bakery, the Gulf clan stopped coming in person and only contacted petitioner telephonically. We respectfully submit that is fruitful. That is, I mean, improving the situation. Counsel, when I read the IJ's decision versus the BIA's decision, I didn't see the IJ specifically analyzing the fact that the telephonic threats continued even after the in-person threats ended. How do you think we should analyze that, or do you disagree with that reading of the decision? But I didn't see the IJ grappling with the telephonic threats in particular. I don't recall that either. But, I mean, again, I mean, as I said before, even if the telephonic threats, I mean, there still is a lesser form of harassment, so that is improving the situation. So even if the immigration judge didn't specifically discuss that in her opinion, I mean, as we said in our brief and one of the footnotes, I mean, this court is not oblivious to the administrative record, I mean, merely because the evidence isn't actually discussed in the agency's opinion does not mean that the court is precluded from considering that evidence. So we subside a couple of decisions in that regard. But to answer your question directly, no, I don't believe she did. But, again, going back to your question about how we deal with the fact that the record is ambiguous, whether the petitioner has a burden of showing reversible error, and it's also his burden to show that the record is clear in that regard. So he gave conflicting answers at the hearing. But if you look at the written statements, absolutely nothing says that he contacted the police regarding the telephonic threats. The only thing that's discussed is including the police commissioner's affidavit was the in-person threat, and the police did respond to that. I believe petitioner faults the lack of adequate investigation by the authorities. Does the record disclose if the petitioners, and I think this really follows up on Judge Rickleman's early question, were they ever able to identify the individuals who were the source of these threats so that the authorities could investigate them with the benefit of that information? I'm sorry. Does the record indicate whether they were ever able to identify the source of the threats for the authorities? This court's case law, again, we cite that. I mean, that matters, whether or not the police's response has to be made in the context of whether or not the complainant actually gave the police something to work on. In this case, the petitioner admitted that he did not know the individuals who came to his bakery, and he couldn't give them a description either because they were wearing motorcycle helmets. And he also tried to make the argument that the Gulf Clan was a quasi-governmental entity, and the immigration judge took that argument seriously. She rejected it, I mean, correctly, but if you're making an argument that the criminals are a quasi-governmental entity, chances are there are a lot of gang members in that clan, so this isn't a situation where the police could say, hey, I was harassed by these people. They can't say, hey, I have a pretty good idea who it is. I mean, the Gulf Clan probably is not in the record, but they probably have a couple thousand members, so the police really have no way of even guessing about who the people who visit. Doesn't that all go to the unwilling rather than the unable? Doesn't that go to the unwilling prong more than the unable? I think it goes to both. I mean, if the police don't even know, can't even guess who could. That would suggest that they are unable. Okay, all right. But you're trying to say they're not unable. I'm saying the police have no idea who they are. Right. That's what I'm saying. That suggests that they are unable to do anything about it. They really can't, no. Right, but you don't want to say that because you're trying to say that they are able to do something about it. It also goes to another point I was hoping to make, that if you can't solve the crime, but no government can be expected to solve that crime based on a lack of information, then that does not mean that the government is unable to. Have we held that? Have we held that? Yes, I think so, too. I think it was the case involving human trafficking, Burbine, I think it is, where the court said, look, the government, I can't remember what country it was, Brazil perhaps, the complaint says human trafficking still exists, you haven't solved it, and this court said no government can be expected to solve that. If the police's inability to stop the crime is indistinguishable from any other government's ability to stop this crime, then the government is not unable to protect you. If this happened here in Boston, I'm not sure what exactly the Boston police will be able to do to stop the threats or conduct an investigation. I mean, they could go Casablanca, do a Capernauta, run up the usual suspects, but that doesn't really seem like a particularly productive exercise. I'm sure the police would love to try to go stop the people who are harassing, who are threatening petitioners, but there just really wasn't a lot they can do, but that does not mean that the government was unable to protect them. They did all they could. I mean, they sent a police officer over there in response to the immigration judge called extraordinary, and if you read the sister's affidavit, they actually tried to tap, to work the phone lines to block the threatening numbers, but the calls kept coming from an unknown number. They were probably burner phones, so I mean, as Judge Lopez said in the Ortiz-Zanariba decision back in 2007, I mean, governments cannot be expected to provide absolute protection from crime. Well, but you keep saying crime, but I guess I just, I mean, some of the implications of us adopting that view would be pretty concerning. If you think about pogroms or something like that, there's just nothing they can do. It's just overwhelming private violence. They're just terrorizing these communities. Isn't that why we have asylum is for people that are in those circumstances? So if this was ordinary crime, but at least the claim is it rises to a certain level that constitutes persecution. I thought the narrow argument you were making is that they did try and stop the actual physical threats. All that remained were the telephonic threats at that point, and in that context at least to say that they are unable to stop persecution seems a bit strong. But they've improved the situation. They've improved, but the fact that they haven't actually, I mean, caused it to stop does not mean that they're unable to protect. I mean, again, that's a burden that no government could be expected to meet. Again, while you're here, one more educational question. If the evidence were to establish that the private actor is actually a surrogate for the government, there is that link, would the protected grounds then matter in terms of establishing persecution? Could you repeat that one more time? Sure. If the evidence were to establish that the private action was actually a surrogate for the government, so that there was no meaningful distinction between the government and the private actor, in that instance would the protected grounds have to be established as well? The protected grounds?  Yes. Yes, they would be. So even if this was done by a quasi-governmental entity, you would still have to show a protected ground, race, religion, and the rest. So, yes. And again, the agency didn't reach that issue.  Okay. I understand. Okay. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the petitioners please reintroduce himself on the record? He has a one-minute rebuttal. Thank you. Ronald Abramson on behalf of the petitioner. Very quickly, one major point here is that the word only referring to telephonic threats is unduly dismissive. Threats like these are inherently harmful. These threats would be a crime in every one of the 50 states in the United States. So the idea that because someone didn't show up in person but continued to call and continued to talk about horrific things to be done for a lack of support for what is effectively a quasi-political cause, to go back to nexus issues, if you have social group issues and imputed political opinion not supporting the agenda of the Gulf clan, it just fails to account in these cases for the fact that that harm persists. It's mental. It's emotional. It's psychological. And to say just because no one showed up again, it discounts what can be a valid asylum claim. And lastly, if I may address, Your Honor, Rickleman's last point from before, just to say that there was a report made. There was an action taken. What never occurred was any formal notice to petitioner that there was an ongoing investigation. Your Honors brought it up. Did they even talk to anyone or did they say, ah, they were wearing motorcycle helmets, there's nothing we can do? That goes to unable. Thank you. Thank you, Counsel. That concludes argument in this case.